**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

WINGZ AND THINGZ 1, INC.

        Case No. 11-11006

      Plaintiff,              Hon. Lawrence P. Zatkoff

v.

PENN-STAR INSURANCE CO.,

      Defendant.

_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on December 5, 2012.

PRESENT:  THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I.  INTRODUCTION

This matter is before the Court on Defendant's Motion for Summary Judgment [dkt 35].  The

Motion has been fully briefed.  The Court finds that the facts and legal arguments are adequately

presented in the parties' papers such that the decision process would not be significantly aided by oral

argument.  Therefore, pursuant to E.D. Mich. L.R. 7.1(f)(2), it is hereby ORDERED that the Motion be

resolved on the briefs submitted, without oral argument.  For the following reasons, Defendant's

Motion for Summary Judgment is GRANTED.

## II.  BACKGROUND

Plaintiff Wingz and Thingz I, Inc. ("Plaintiff") is a Michigan corporation operated by Angela

Suleiman ("Suleiman"), with its registered office located at Suleiman's home at 42330 Sable, in

Sterling Heights, Michigan.  Giovanna Inc. ("Giovanna") is another Michigan corporation, also

operated by Suleiman.  Giovanna owned property located at 3301 East 7 Mile Road in Detroit,

Michigan ("Detroit Property").  Plaintiff, however, owned the restaurant business that occupied the Detroit Property.  The Detroit Property was insured against commercial perils by Defendant Penn-Star Insurance Company ("Penn Star"), under the terms of a commercial perils policy ("the Policy").

On December 23, 2008, the Detroit Property was damaged by a fire.  On December 26, 2008, Plaintiff filed an insurance claim and demand for coverage with Penn-Star for damage caused by the fire.[1] Plaintiff supported its demand for coverage with invoices purportedly from four different businesses—A&S Construction ("A&S"), Italian Village restaurant, First Defense Securities ("First Defense"), and Neons R Us (collectively, "the Invoices").  According to Plaintiff, these invoices represented expenses paid by Plaintiff for certain services and equipment that were lost or damaged in the fire at the Detroit Property and that Plaintiff sought coverage for under the Policy.

Defendant denied Plaintiff's insurance claim, stating that the four invoices were fraudulent and citing a provision of the Policy that voids coverage in instances of fraud.[2]  Plaintiff then filed suit in this Court on March 14, 2011, alleging that Defendant's refusal to pay Plaintiff's claim constituted a breach of the Policy.

---

[1] On June 7, 2009, another restaurant owned by Suleiman located at 3639 East Nine Mile Road in Warren, Michigan ("Warren Property") was damaged by fire.  Suleiman made a claim to Penn-Star for the damage to the Warren Property, but the claim was denied due to Suleiman's purported fraud and connection to the arson.  Suleiman filed suit in this District alleging breach of the policy in connection with the fire at the Warren Property.  The case was later voluntarily dismissed and Penn-Star made no payment in exchange for the dismissal.

[2] The Policy states in relevant part:

> A. CONCEALMENT, MISREPRESENTATION OR FRAUD
> This Coverage Part is void in any case of fraud by [Plaintiff] as it relates to this Coverage Part at any time.  It is also void if [Plaintiff] or any other insured, at any time, intentionally conceal[s] or misrepresent[s] a material fact concerning:
>
> > 1. This Coverage Part
> > 2. The Covered Property;
> > 3. [Plaintiff's] interest in the Covered Property; or
> > 4. A claim under this Coverage Part.

*See* Dkt. 35, ex. 3 at 5.

## III.  LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A party must support its assertions by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or;
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

The moving party bears the initial burden of demonstrating the absence of any genuine dispute as to a material fact, and all inferences should be made in favor of the nonmoving party. *Celotex*, 477 U.S. at 323. The moving party discharges its burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citing *Celotex*, 477 U.S. at 325).

Once the moving party has met its initial burden, the burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[T]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

# IV. ANALYSIS

Defendant asserts that it is entitled to summary judgment on two distinct grounds.  Defendant contends that the Invoices Plaintiff submitted to support its demand for coverage were fraudulent and forged, thereby voiding the Policy altogether and precluding Plaintiff from coverage.  Additionally, Defendant claims that Plaintiff is not entitled to payment under the Policy because Plaintiff neither owns nor has a pecuniary interest in the Detroit Property, which is purportedly owned by Giovanna. The Court turns first to the operative issue in this case—the fraudulent invoices.

## A. FRAUDULENT INVOICES

According to Defendant, officials representing the four businesses that allegedly issued the Invoices testified under oath that the Invoices were fraudulent.  Based on this, Defendant asserts, the Policy became void and Plaintiff is not entitled to any coverage.  The Court will address each Invoice in turn.

### 1.  A & S Construction Invoice

Plaintiff attempted to recover from Defendant the costs of renovations purportedly done by A&S, which is owned by Waseem Shamoun ("Shamoun").  Plaintiff submitted what she claims to be an invoice from A&S for remodeling work, purportedly showing an amount of $36,650 paid by Suleiman to A&S, and purportedly signed by Suleiman and Shamoun.  At his deposition, however, Shamoun testified under oath that although he prepared an estimate to remodel the Detroit Property for Plaintiff, no work was ever performed.  In fact, according to Shamoun, A&S never performed work at the Detroit Property, either before or after the fire.

Defendant argues that the A&S Invoice was fraudulently submitted by Plaintiff, based on Shamoun's sworn testimony that A&S never performed renovation work at the Detroit Property, and that the invoice provided by Plaintiff was merely an estimate.

Plaintiff attempts to rebut Defendants claims by citing to an "affidavit" by Suleiman, wherein she claims that she paid A&S in cash and accuses Shamoun of lying because he "was trying to hide his income from the IRS and his wife due to a pending divorce so he was motivated to lie about these payments, this contract and the work that was done by him and his subcontractors to the [Detroit Property.]" According to Plaintiff, Suleiman's "affidavit" is sufficient to create a genuine dispute of fact that must be determined by a jury.  The Court disagrees.

An affidavit used to oppose a motion for summary judgment must "be sworn to by the affiant in front of an 'officer authorized to administer oaths,' " *Peters v. Lincoln Elec. Co.,* 285 F.3d 456, 475 (6th Cir. 2002) (quoting Black's Law Dictionary 54 (5th ed. 1979)), and must be made on the affiant's personal knowledge. Fed. R. Civ. P. 56(c)(4).  Alternatively, under 28 U.S.C. § 1746, a declaration may be used in place of an affidavit so long as the declaration is made under penalty of perjury, is certified as true and correct, and is signed and dated.  *See Pollock v. Pollock,* 154 F.3d 601, 612 n. 20 (6th Cir. 1998); *Bonds v. Cox,* 20 F.3d 697, 702 (6th Cir. 1994).  Statements that are not sworn in one of these two ways are not competent summary judgment evidence. *See Harris v. J.B. Robinson Jewelers,* 627 F.3d 235, 239 n. 1 (6th Cir. 2010) ("[A] court may not consider unsworn statements when ruling on a motion for summary judgment.") (quoting *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 968–69 (6th Cir. 1991)).

Suleiman's "affidavit" is hardly a declaration, let alone an actual affidavit.  It is not notarized, made under penalty of perjury, certified as true and correct, signed, or even dated.  As such, the "affidavit" is not competent evidence with which to oppose summary judgment.  As Plaintiff provides no other evidence to rebut Defendant's claim and evidence of fraud with respect to the A&S invoice, Defendant is entitled to summary judgment on this issue.

As only a single instance of fraud is required to void the Policy under its terms, the Court is, at this point, well within its discretion to grant Defendant's Motion.  Notwithstanding this, Defendant is

entitled to summary judgment on additional grounds.  As such, the Court will continue its analysis, turning next to the Italian Village Invoice.

    *2.  Italian Village Invoice*

    Plaintiff also submitted an invoice purporting to document the purchase of a used computer system for the restaurant, which Plaintiff included in the demand for coverage it submitted to Penn-Star.  According to Suleiman, she purchased the system, via eBay, from a Chicago, Illinois restaurant called Italian Village:

> Q.  Why does this say Italian Village, 71 Monroe Street?
>
> A. Because the people that I purchased the equipment from was [sic] people—we found this system on eBay, they were selling it, an Italian restaurant in Chicago. We found them from here on eBay. We went over there to go and check out the equipment, we drove there one day, bought them [sic] from there and came back.

Dkt. 35, ex. M.

    An employee of Italian Village—Joseph Denninger—testified under oath and denied ever selling a computer system to Plaintiff.  Denninger is the general manager of operations for Italian Village, and has worked there for over 10 years, including the period of the alleged sale of the computer system to Plaintiff.  According to Denninger, he would know if Italian Village sold any of its computer equipment, and he denied that Italian Village had ever done business with Plaintiff or Suleiman.  In fact, he denied that Italian Village ever sold any of its computer equipment to *anyone*, either via eBay or otherwise.  Denninger then reviewed the handwritten invoice presented to Defendant by Plaintiff and noted that it was not of the type used by Italian Village, while also pointing out that the invoice contained an incomplete address and an incorrect phone number.

    Additionally, Defendant retained a handwriting analyst—Eric Speckin—who examined the Italian Village invoice and compared it with examples of Suleiman's handwriting.  Speckin concluded that Suleiman wrote the Italian Village invoice herself.

6

In response, Plaintiff assumes a similar strategy of denial, and cites again to Suleiman's "affidavit." In the "affidavit," Suleiman again tries to shift fault onto Shamoun, claiming that she paid him $8500 in cash for the computer system, but that, other than from him, she does not know where the computers came from. On these bases, Plaintiff claims that "just because one might find that the receipts were not accurate does not mean that Plaintiff did anything wrong that can be held against it," and that "[a]t best this is a jury question again." The Court finds Plaintiff's claims misplaced, and perhaps even disingenuous to the Court.

Notwithstanding the fact that, as discussed above, the "affidavit" is insufficient summary judgment evidence, the substance of the affidavit is such that no reasonable jury could rely on it in finding for Plaintiff. Even if Suleiman's affidavit were proper evidence to consider, the Court finds that Suleiman blatantly contradicts statements she made under oath during deposition. While being deposed, Suleiman stated as follows:

> the people that *I purchased the [computer system] from* was [sic] people—*we found this system on eBay,* they were selling it, an Italian restaurant in Chicago. *We found them from here on eBay. We went over there to go and check out the equipment, we drove there one day, bought them from there and came back.*

(emphasis added). Yet, in her "affidavit," Suleiman claimed quite the opposite:

> the information concerning Italian Village was provided to me by Shamoun and the receipts were provided to me by Shamoun in his office. I paid Shamoun for the . . . computers[,] $8,500 in cash, but I do not know where the computers actually came from except from Shamoun . . . . I do not know whether these computers came from said Italian Village as I had and have no first hand information of where these systems actually came from.

Suleiman unambiguously states in her "affidavit" that she was personally involved in: finding the computer system on eBay; traveling to Chicago; inspecting the computer system; purchasing it; and driving back to Michigan. This account is in stark contrast to the one Suleiman stated under oath. Plaintiff cannot create a disputed issue of material fact by filing an "affidavit" from Suleiman that contradicts Suleiman's earlier deposition testimony. *See Penny v. United Parcel Service*, 128 F.3d 408,

7

415 (6th Cir. 1997) ("[A] party cannot create a genuine issue of material fact by filing an affidavit, after a motion for summary judgment has been made, that essentially contradicts his earlier deposition testimony."). Thus, even if the "affidavit" were properly submitted to the Court, it is nevertheless insufficient evidence for a jury to reasonably find for Plaintiff. Defendant is entitled to summary judgment on this issue.

### 3. First Defense Invoice

Next, Suleiman submitted invoices from First Defense to support Plaintiff's claim of loss as to a security system purportedly installed and serviced by First Defense. According to Suleiman, First Defense installed and monitored the security system for the Detroit Property. Defendant, however, claims that First Defense ceased doing business in July 2001, 8 years before it allegedly sold the security system to Plaintiff. In support of this claim, Defendant submits a document from the State of Michigan's Department of Licensing and Regulatory Affairs. According to the document, First Defense was "automatically dissolved" as of July 15, 2001.

Plaintiff again denies this and relies solely on yet another faulty "affidavit," this time from an individual named "Amar Oraha." Oraha does not appear by name on Plaintiff's witness list. Moreover, Oraha's "affidavit" is fatally flawed for the same reasons as Suleiman's—it is not notarized, signed, or dated. Notwithstanding this, Plaintiff theorizes that "the fact that the State of Michigan's records show that [First Defense] has not complied with the strictures of filing of annual reports by the State is not determinative of the legitimacy of the [First Defense Invoice.]" Yet, the Court notes that Plaintiff is required to do more than just show "that there is some metaphysical doubt as to the material facts." *Matsuhita*, 475 U.S. at 586. Rather "there must be evidence on which the jury could reasonably find for [Plaintiff]." *Liberty Lobby*, 477 U.S. at 252. Plaintiff, however, fails to provide such evidence. The faulty "affidavit" from Oraha, along with Plaintiff's bare assertion that the State of Michigan document does not necessarily delegitimize the First Defense Invoice, are insufficient to create a

genuine factual dispute such that a reasonable jury could find for Plaintiff.  As such, Defendant is entitled to summary judgment on this issue.

      *4.  Neons R Us Invoice*

      Plaintiff also submitted an invoice for neon signs it purportedly purchased from a company called Neons R Us, located at 98 Goldengate Street in Detroit, Michigan.  As to this invoice, the Court does find a genuine dispute of fact as to whether it was submitted in support of Plaintiff's coverage demand in connection with the Detroit Property, or was instead submitted by Plaintiff in connection with the insurance claim on the Warren Property.  While the parties do not adequately reference specific portions of the record to clarify this issue, the Court need not resolve it, as only a single instance of fraud is necessary to void the Policy.  As discussed above, no reasonable jury could find for Plaintiff with respect to Defendant's claims of fraud in connection with the other Invoices.

**B.  PLAINTIFF'S INTEREST IN THE DETROIT PROPERTY**

      As the Court has found that Defendant is entitled to summary judgment based on Plaintiff's fraud and misrepresentation, the Court need not make any findings as to Defendant's alternate theory that Plaintiff lacked any insurable interest in the Detroit Property.

## V.  CONCLUSION

      Accordingly, and for the reasons set forth above, it is HEREBY ORDERED that Defendant's Motion for Summary Judgment [dkt 35] is GRANTED.

      IT IS SO ORDERED.

s/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
U.S. DISTRICT JUDGE

DATED: 12/5/2012
